**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| IN RE RESTRAINT OF ALL ASSETS CONTAINED OR FORMERLY CONTAINED IN CERTAIN INVESTMENT ACCOUNTS AT UBS FINANCIAL SERVICES, INC. HELD IN THE NAMES OF CARIBBEAN INVESTMENT GROUP, LTD., PONSFORD OVERSEAS LTD., AND TULA FINANCE LTD. |

Misc. Action No. 11-00452 (CKK)

**MEMORANDUM OPINION AND ORDER**
(May 17, 2012)

Upon receiving a request for legal assistance from Curaçao, the United States brought this action seeking to restrain assets contained in three investment accounts at UBS Financial Services, Inc. ("UBS") held in the names of Caribbean Investment Group, Ltd. ("CIG"), Ponsford Overseas, Ltd. ("Ponsford"), and Tula Finance Ltd. ("Tula") (collectively, the "Companies").[1] On August 12, 2011, the United States applied to this Court for a restraining order under 28 U.S.C. § 2467(d)(3), claiming that a restraint on the three UBS accounts is necessary to preserve the assets for potential forfeiture in connection with an ongoing criminal investigation by Curaçao authorities. The Court entered an appropriate restraining order on August 23, 2011, and, upon the United States' application, amended that order to cover two additional UBS accounts on November 2, 2011.

Since then, there have been a number of developments. Most notably, upon a challenge by Ponsford and Tula, the Court of First Instance of Curaçao (the "Curaçao Court") essentially

---

[1] The three UBS accounts are: Account # R2 66631, held in the name of CIG; Account # R2 67045 37, held in the name of Ponsford; and Account # R2 67187 37, held in the name of Tula.

vacated the order that supports this Court's restraining order, insofar as it applies to the three UBS accounts.  But the Curaçao Court also issued another order authorizing a restraint on the three UBS accounts on different grounds.  The Curaçao Court has, furthermore, rejected the Companies' challenge to that separate order, leaving it untouched and in force.  Accordingly, the matter returns to this Court in the following posture: the original foundation for the Court's restraining order has disappeared, but a new one has been put in place.

Two pending motions address this new state of affairs: the United States' [8] Second Motion to Amend the Retraining Order Pursuant to 28 U.S.C. § 2467(d)(3) and 18 U.S.C. § 983(j)(1)(A) ("Motion to Amend"); and Ponsford and Tula's [9] Emergency Motion to Dissolve Restraining Order ("Motion to Dissolve").  Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall GRANT the United States' [8] Motion to Amend and DENY Ponsford and Tula's [9] Motion to Dissolve.

## I. BACKGROUND

Curaçao and the United States have agreed to provide one another mutual legal assistance in their criminal investigations and proceedings.  *See* TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE KINGDOM OF THE NETHERLANDS ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, U.S.-Neth., June 12, 1981, 35 U.S.T. 1361; AGREEMENT BETWEEN THE GOVERNMENT OF THE UNITED STATES AND THE GOVERNMENT OF THE KINGDOM OF THE NETHERLANDS REGARDING MUTUAL COOPERATION IN THE TRACING, FREEZING, SEIZURE, AND FORFEITURE OF PROCEEDS AND INSTRUMENTALITIES OF CRIME AND THE SHARING OF FORFEITED ASSETS, U.S.-Neth., Nov. 20, 1992, T.I.A.S. No. 12,482.[2]  Among other things, Curaçao may seek the United States' assistance in

---

[2] Curaçao is now a constituent country within the Kingdom of the Netherlands and has adopted both of the cited accords.

enforcing a "forfeiture or confiscation judgment"—a "final order" compelling the forfeiture of property or proceeds traceable to "any violation of [Curaçao] law that would constitute a violation or an offense for which property could be forfeited under Federal law if the offense were committed in the United States"—and district courts may register and enforce such judgments.  28 U.S.C. § 2467(a)(2), (c)(1), (d)(1).  In addition, and more germane to the pending motions, Congress has authorized district courts to issue "restraining order[s] at any time before or after the initiation of forfeiture proceedings by [Curaçao]" in order "[t]o preserve the availability of property subject to civil or criminal forfeiture under [Curaçao] law."  Id. § 2467(d)(3)(A)(i).

### A.    The Investigation

In 2008, Curaçao began an investigation into large cash deposits allegedly made by a Curaçao national, Robertico Alejandro dos Santos ("dos Santos"), into a bank account held by CIG in Sint Maarten.[3]  (See Decl. of Curaçao Public Prosecutor Jasper Marc Mul in Supp. of United States' Opp'n to Mot. to Dissolve Restraining Order, ECF No. [14-1] ("Mul Decl."), ¶ 8.)[4] As the investigation developed, Curaçao authorities came to believe that dos Santos was engaged in, among other things, money laundering.

Under Curaçao law, a final order of forfeiture can only be issued once a criminal defendant has been convicted.  (See id. ¶¶ 18, 20.)  However, when the Public Prosecutor's Office (the "PPO") believes that significant assets will need to be restrained during a criminal

---

[3]  To be precise, the investigation began in Sint Maarten, which like Curaçao was then part of the former Netherlands Antilles.  Curaçao authorities took over the investigation in 2010.

[4]  Where appropriate, the Court cites to declarations describing the nature of the investigation and proceedings in Curaçao.  See 28 U.S.C. § 2467(d)(3)(B) ("The court, in issuing a restraining order . . . may rely on information set forth in an affidavit describing the nature of the proceeding or investigation underway . . . .").

investigation, it may ask the Curaçao Court to authorize a parallel criminal financial investigation known as a *Strafechtelijk Financieel Onderzoek* ("SFO"), the principal purpose of which is to identify and preserve assets for post-conviction forfeiture proceedings. (See id. ¶¶ 15, 18.)

To secure authorization for an SFO, the PPO must show that there is *redelijk vermoeden*, or reasonable suspicion, that a felony has been committed that is punishable by four or more years imprisonment and/or that has generated substantial ill-gotten gains. (See id. ¶¶ 16-17.) In this case, on June 15, 2011, the PPO sought the Curaçao Court's authorization to conduct an SFO into dos Santos and CIG.[5] (See Decl. of Curaçao Attorney Eldon Sulvaran in Supp. of Emergency Mot., ECF No. [9-2] ("Sulvaran Decl."), Ex. 1; see also Mul Decl. ¶ 22.) The Curaçao Court authorized the SFO on June 16, 2011, basing its order on "the reasons" identified in the PPO's underlying application. (Sulvaran Decl. Ex. 1.) That is, the Curaçao Court accepted that: (1) there was reasonable suspicion that dos Santos and CIG were involved in, among other things, money laundering; and (2) the launch of a criminal financial investigation for the "detection, tracing, and establishment of the scope of the benefit unlawfully obtained by the suspect[s] and the confiscation thereof . . . must be deemed necessary." (Id.)

## B.   The Curaçao Court's July 2011 Order

Generally speaking, the authorization of an SFO vests the PPO with broad authority to seize assets without further judicial intervention. But where, as here, assets are located abroad or are held by third parties, the PPO typically seeks a separate court order authorizing their seizure. (See Mul Decl. ¶¶ 26, 28.) On July 14, 2011, the PPO sought the Curaçao Court's

---

[5] A Sint Maarten entity known as Jamaroma Lotteries N.V. was also named.

authorization to seize the assets in the three UBS accounts, which are domiciled in Miami, Florida and held in the Companies' names.  (See Supplemental Decl. of Curaçao Public Prosecutor Jasper Marc Mul, ECF No. [20-5] ("Suppl. Mul Decl."), Attach. 1.)  In so doing, the PPO only named dos Santos as the relevant suspect; it did not identify the Companies themselves as suspects at the time.[6]  (See id.)  Instead, the PPO claimed that dos Santos was the true owner of the accounts and had the ability to dispose of the assets.  (See id; Mul Decl. ¶¶ 32-35.)  On July 14, 2011, the Curaçao Court authorized the seizure up to $50 million in assets in the three UBS accounts "on the grounds as reported" (the "July 2011 Order").  (Suppl. Mul Decl. Attach. 1; see also Mul Decl. ¶¶ 32, 36; Sulvaran Decl. ¶ 19.)  That is, the Curaçao Court accepted that: (1) there is reason to believe that dos Santos "played an active role" in, among other things, money laundering; and (2) dos Santos "apparently can dispose" of the assets in the three UBS accounts.  (Suppl. Mul Decl. Attach. 1.)

C.     This Court's Restraining Order

On July 29, 2011, Curaçao requested the United States' assistance in the enforcement of the July 2011 Order.  (See Mul Decl. ¶ 36.)  On August 8, 2011, the Attorney General of the United States, through his delegee, determined that certifying Curaçao's request was in the interest of justice pursuant to 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii).  (See United States' Ex Parte Appl. to Enforce & Register a Foreign Restraining Order Pursuant to § 2467(d)(3) & Stmt. of P. & A. in Supp. Thereof, ECF No. [1] ("United States' Appl."), Exs. B-C.)  On August 12, 2011, the United States applied to this Court for an order restraining the assets in the three UBS accounts pursuant to 28 U.S.C. § 2467(d)(3).  (See United States' Appl.)  On August 22, 2011, upon the

---

[6] Although CIG had been a suspect in the SFO from the outset, it was not identified as a relevant suspect in the PPO's July 14, 2011 application.  (See Suppl. Mul Decl. Attach. 1; Sulvaran Decl. Ex. 1.)

Court's request, the United States provided additional briefing as to how the relief requested was consistent with case law interpreting the reach of § 2467(d)(3). (See United States' Supplemental Mem. in Resp. to the Court's Aug. 17, 2011 Minute Order Regarding the Proper Appl. of 28 U.S.C. § 2467(d)(3), ECF No. [2]; United States' Supplemental Mem. in Resp. to the Court's Aug. 22, 2011 Minute Order Regarding the Legislative History of 28 U.S.C. § 2467(d)(3) as Am., ECF No. [3].)[7]

After carefully reviewing the United States' submissions and the relevant authorities, the Court granted the application. (See Restraining Order pursuant to 28 U.S.C. § 2467(d)(3) & 18 U.S.C. § 983(j)(1)(A), ECF No. [4].) Subsequently, upon the United States' application, the Court amended its order to cover two additional UBS accounts on November 2, 2011.[8] (See United States' Ex Parte Mot. to Amend Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3) & 18 U.S.C. 983(j)(1)(A), ECF No. [5]; Am. Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3)(A) & 18 U.S.C. § 983(j)(1)(A), ECF No. [6-1] ("Am. Restraining Order").) In its current form, the Court's restraining order, insofar as it applies to the three UBS accounts, rests on the validity of the July 2011 Order of the Curaçao Court. (See Am. Restraining Order ¶ 1.)

---

[7] On December 22, 2010, through the Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 111-342, 124 Stat. 3607 (2010), Congress amended 28 U.S.C. § 2467(d)(3) partly in response to case law interpreting the prior iteration of the statute as limiting courts' authority to freezing assets only *after* a foreign court enters a final forfeiture judgment. See, e.g., In re Any & All Funds or Other Assets, in Brown Bros. Harriman & Co. Account # 8870792 in the Name of Tiger Eye Invs. Ltd., 613 F.3d 1122 (D.C. Cir. 2010). As amended, the statute now clearly authorizes courts to issue a restraining order "at any time before or after the initiation of forfeiture proceedings by a foreign nation." 28 U.S.C. § 2467(d)(3)(A)(i).

[8] The two additional UBS accounts are: Account # R2 66409, held in the name of dos Santos; and Account # R2 66410.37, held in the name of dos Santos' spouse. Because these two accounts are not presently at issue, the Court omits further discussion of them herein.

### D.     The Article 150 Proceedings in Curaçao

Article 150 Sv of Curaçao's Code of Criminal Procedure ("Article 150") provides a vehicle for parties to challenge an authorization of seizure.  (See Suppl. Mul Decl. ¶ 4; Expert Op. of Jan Reijntjes, ECF No. [15-1] ("Reijntjes Decl."), ¶ 21.)  On December 15, 2011, dos Santos commenced an Article 150 proceeding in the Curaçao Court challenging the July 2011 Order.  (See Mul Decl. ¶ 40; Sulvaran Decl. ¶ 34.)  On February 22, 2012, Ponsford and Tula commenced a separate Article 150 proceeding after the PPO took the position that dos Santos was without standing to pursue his challenge because the assets in the UBS accounts are the sole property of the Companies.  (See Mul Decl. ¶¶ 41-42; Sulvaran Decl. ¶ 34.)

### E.     The Curaçao Court's January 2012 Order

On January 12, 2012, while the Article 150 proceedings were ongoing, the PPO returned to the Curaçao Court, again seeking authorization to seize the assets in the three UBS accounts.  (See Suppl. Mul. Decl. Attach. 2.)  As before, the PPO proffered that dos Santos was the animating force behind the underlying criminal activity, but this time the PPO also named the Companies themselves as suspects in the money laundering scheme.  (See id.; Mul Decl. ¶ 38; Sulvaran Decl. ¶ 35.)  On January 19, 2012, the Curaçao Court authorized the seizure of up to $60 million in assets in the three UBS accounts "on the grounds as reported" (the "January 2012 Order").  (Suppl. Mul Decl. Attach. 2.)[9]  That is, the Curaçao Court accepted that: (1) the Companies "can (now) also be regarded as suspects and the balances in the . . . investment accounts with UBS can also be seized under them as holder and/or beneficiary of . . . those accounts"; and (2) there is reason to believe that the Companies "have played an active role"

---

[9]  The English translation was signed on January 26, 2012.  (See Suppl. Mul Decl. Attach. 2.)

in money laundering.  (Id.)

On February 15, 2012, Curaçao requested the United States' assistance in the enforcement of the January 2012 Order.  (See Mul Decl. ¶ 39).  However, Curaçao and the United States were apparently content with this Court's restraining order in the form that it then existed, resting as it did on the July 2011 Order, because neither Curaçao nor the United States pressed the matter until subsequent events called into question the validity of the July 2011 Order.  (See id.)

### F.      The Article 43 Proceedings in Curaçao

Article 43 Sv of Curaçao's Code of Criminal Procedure ("Article 43") provides a vehicle for parties to seek interim relief in criminal proceedings.  (See Mul Decl. ¶ 49.)  On March 14, 2012, while the Article 150 proceedings concerning the July 2011 Order were still ongoing, the Companies commenced separate Article 43 proceedings challenging the January 2012 Order. (Id.)  In those proceedings, the Companies petitioned the Curaçao Court to enjoin the PPO from using the January 2012 Order to restrain the three UBS accounts.  (See Sulvaran Decl. Ex. 4.)

### G.      The Curaçao Court's April 2012 Orders

On April 4, 2012, the Curaçao Court issued two orders altering the landscape of this case.

First, in one order, the Curaçao Court sustained Ponsford and Tula's Article 150 challenge and, in effect, vacated the July 2011 Order as it applied to them (the "First April 2012 Order").[10]  (See Sulvaran Decl. Ex. 3.)  As aforementioned, in the application that ultimately led to the July 2011 Order, the PPO identified only dos Santos as the relevant suspect, claiming that

---

[10]  Meanwhile, the Curaçao Court agreed that dos Santos lacked standing to challenge the July 2011 Order because that order involved a "third-party seizure."  (Sulvaran Decl. Ex. 3.)

he was the actual owner of the accounts and had the ability to dispose of the assets.  (See Suppl. Mul Decl. Attach. 1.)  In its First April 2012 Order, the Curaçao Court concluded that the July 2011 Order was invalid because Ponsford and Tula were not encompassed "within the framework of [the] criminal financial investigation" and because the PPO had failed to show "beyond a reasonable doubt that the respective claims do not belong to Ponsford and Tula."[11] (Sulvaran Decl. Ex. 3.)  On that basis, the Curaçao Court directed that the seizure, as authorized by the July 2011 Order, "be lifted."  (Id.)

Second, in a separate order, the Curaçao Court dismissed the Companies' Article 43 challenge to the January 2012 Order (the "Second April 2012 Order").  (See Sulvaran Decl. Ex. 4.)  The Curaçao Court found that the Companies could not bring their challenge under Article 43 because "Article 43 of the Code of Criminal Procedure does not allow for the requested provision, since Article 150 of the Code of Criminal Procedure includes a stipulation with regard to complaints about a seizure."  (Id.)  The parties disagree as to the Curaçao Court's reasoning.  On the one hand, the Ponsford and Tula suggest, without any support in the Second April 2012 Order, that the Curaçao Court found that their challenge was unripe because no assets had actually been restrained under the January 2012 Order.  (See Reijntjes Decl. ¶ 26.)  Meanwhile, the United States, citing the language of the order itself, takes the position that the Curaçao Court simply found that Article 43 was not the proper procedural vehicle for the Companies' challenge, and that the Companies should instead resort to Article 150.  (See Mul.

---

[11]  Under Curaçao law, there is a presumption that assets held in the name of a legal entity in fact belong to the entity, and that presumption can only be overcome by showing beyond a reasonable doubt that the assets are in fact the property of the suspect.  (See Sulvaran Decl. Ex. 3; Suppl. Mul Decl. ¶ 6; but see Reijntjes Decl. ¶ 23.) The PPO admits that it did not present evidence that the UBS accounts actually belong to dos Santos, claiming that it did so for strategic reasons.  (See Mul Decl. ¶¶ 39, 53; Suppl. Mul Decl. ¶ 6.)

Decl. ¶¶ 56-57.) Regardless, this much is clear: the Curaçao Court's Second April 2012 Order dismissed the Companies' challenge, leaving the January 2012 Order untouched and in force.[12]

### H.   **The Instant Motions**

The vacatur of the July 2011 Order—the foundation for this Court's restraining order—prompted Curaçao to ask the United States to seek the enforcement of the January 2012 Order. Curaçao renewed its request on April 5, 2012, and the Attorney General, through his delegee, determined that certifying Curaçao's request was in the interest of justice. (See Mul Decl. ¶ 39; United States' Second Mot. to Amend the Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3) & 18 U.S.C. § 983(j)(1)(A), ECF No. [8] ("United States' Mot. to Amend Mem."), Ex. 2.) On April 9, 2012, the United States filed the pending Motion to Amend, seeking an order restraining the assets in the three UBS accounts pursuant to 28 U.S.C. § 2467(d)(3) based upon the Curaçao Court's January 2012 Order. (See United States' Mot. to Amend Mem.) Ponsford and Tula filed their opposition on April 24, 2012. (See Ponsford Overseas Ltd.'s & Tula Finance Ltd.'s Opp'n to the United States' Second Mot. to Amend the Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3) & 18 U.S.C. § 983(j)(1)(A), ECF No. [15] ("Ponsford & Tula's Mot. to Amend Opp'n").) The United States filed its reply on May 9, 2012. (See United States' Reply Mem. in Supp. of its Second Mot. to Amend the Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3) & 18 U.S.C. § 983(j)(1)(A), ECF No. [20] ("United States' Mot. to Amend Reply").)

Similarly, the vacatur of the July 2011 Order prompted Ponsford and Tula to seek the

---

[12] Ponsford and Tula interpret the "be lifted" language in the First April 2012 Order as requiring that the assets in the three UBS accounts to be released irrespective of what the Curaçao Court set forth in the January 2012 Order. The Court cannot agree. The Curaçao Court issued its April 2012 Orders on the same day, evidencing that it then understood that the January 2012 Order, which authorizes the seizure of the assets in the three UBS accounts, would remain in effect going forward. Under these circumstances, absent an unequivocal statement from the Curaçao Court that it no longer intends its January 2012 Order to permit the seizure of the assets in the three UBS accounts, the Court will honor the terms of the January 2012 Order as a matter of comity.

dissolution of this Court's restraining order, which in its current form rests on the validity of the July 2011 Order.  Shortly after the United States filed its Motion to Amend, Ponsford and Tula filed their pending Motion to Dissolve.  (See Mem. in Supp. of Ponsford Overseas Ltd.'s & Tula Finance Ltd.'s Emergency Mot. to Dissolve Restraining Order & for a Hr'g on the Government's Second Mot. to Amend the Restraining Order, ECF No. [9-1] ("Ponsford & Tula's Mot. to Dissolve Mem.").)  The United States filed its opposition on April 24, 2012.  (See United States' Mem. in Opp'n to Ponsford Overseas Ltd.'s & Tula Finance Ltd.'s Emergency Mot. to Dissolve Restraining Order & for a Hr'g on the Government's Second Mot. to Amend the Restraining Order, ECF No. [14] ("United States' Mot. to Dissolve Opp'n").)  Ponsford and Tula filed their reply on May 8, 2012.  (See Ponsford Overseas Ltd.'s & Tula Finance Ltd.'s Reply Mem. in Supp. of the Emergency Mot. to Dissolve Restraining Order & for a Hr'g on the Government's Second Mot. to Amend the Restraining Order, ECF No. [17] ("Ponsford & Tula's Mot. to Dissolve Reply").)

## II.  PRELIMINARY MATTERS

Ponsford and Tula contend that they are entitled to a hearing on the United States' Motion to Amend.  (See Ponsford & Tula's Mot. to Dissolve Mem. at 9-11.)  The contention rests on the assumption that 18 U.S.C. § 983(j)(1)(B), which affords interested persons a right to "notice . . . and opportunity for a hearing," applies here.  18 U.S.C. § 983(j)(1)(B).  It does not.

The parties are in agreement that § 983(j)(1)(B) only applies at the pre-filing stage of foreign criminal or forfeiture proceedings and when there is no proceeding in which to challenge the restraint in the foreign country.  (See Ponsford & Tula's Mot. to Dissolve Mem.

at 10; United States' Mot. to Dissolve Opp'n at 12.)[13]   In this case, the Curaçao Court has approved the PPO's criminal financial investigation, the SFO; the purpose of the SFO is to identify and preserve assets for potential forfeiture; the SFO remains ongoing; the Companies are now regarded as suspects; and the Curaçao Court has authorized the restraint of the very assets at issue in this action.  (See Mul Decl. ¶¶ 15-18; Suppl. Mul Decl. Attach. 2; Sulvaran Decl. Ex. 1.)  Moreover, the Curaçao Court's Second April 2012 Order strongly suggests that the Companies can commence Article 150 proceedings to challenge the January 2012 Order in Curaçao right now and, absent a contrary statement from the Curaçao Court, this Court will defer to that judgment.[14]  (See Sulvaran Decl. Ex. 4; see also Mul Decl. ¶¶ 56-57.)[15]  Under these circumstances, § 983(j)(1)(B) does not apply.

In any event, Ponsford and Tula have not even attempted to explain why certain matters could only be elucidated in the context of a hearing and they have not identified any evidence that has not already been presented to the Court on the papers.  They have, in short, failed to articulate any *reason* for a hearing.

For the foregoing reasons, the Court declines to hold a hearing on the pending motions.

---

[13]  In light of the parties' agreement on this point, the Court need not address whether this interpretation is the correct one here.  But see Mem. Order at 3, In re Enforcement of a Retraining Order by the High Court, Misc. Action 11-00208 (GK) (D.D.C. Apr. 4, 2012) ("[Section] 983(j)(1)(B) applies at the pre-filing stage of 'foreign criminal or forfeiture proceedings' where there is no proceeding of any type yet pending in the foreign country in which to challenge the restraint or forfeitable assets."), ECF No. [14].

[14]  On this record, the Court cannot accept Ponsford and Tula's alternative reading of the Second April 2012 Order, which lacks textual support.

[15]  Ponsford and Tula concede that they can bring a challenge to the January 2012 Order in Curaçao as soon as this Court issues a restraining order enforcing the January 2012 Order.  (See Ponsford & Tula's Mot. to Dissolve Mem. at 10; Ponsford & Tula's Mot. to Amend Opp'n at 4; Reijntjes Decl. ¶ 26.)

### III. DISCUSSION

There are two motions pending before the Court: the United States' [8] Motion to Amend; and Ponsford and Tula's [9] Motion to Dissolve.  The Court addresses each in turn.

### A.      The United States' Motion to Amend

Through its Motion to Amend, the United States asks the Court to issue a new restraining order that would effectively substitute the January 2012 Order for the July 2011 Order as the basis for the restraint.  Ponsford and Tula tender a litany of reasons as to why the requested relief should be denied.  The Court addresses those reasons here *seriatim.*

First, Ponsford and Tula argue that the United States may not invoke 28 U.S.C. § 2467(d)(3) because it has not shown that the proper Curaçao authority made the underlying request for legal assistance.  (See Ponsford & Tula's Mot. to Amend Opp'n at 5-6; Ponsford & Tula's Mot. to Dissolve Reply at 3-5.)  However, nothing in § 2467(d)(3) authorizes or requires this Court to pierce the veil of authority behind a request for legal assistance.  Instead, consistent with the general preference to leave matters of foreign affairs in the hands of the Executive, Congress left it to the Attorney General to determine whether a request should be certified and presented to the district court, and that determination is not subject to judicial review.  See 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii).  In this case, because the Attorney General has certified Curaçao's request for enforcement of the January 2012 Order (see United States' Mot. to Amend Mem. Ex. 2), the Court's inquiry is at an end.  Even assuming, *arguendo*, that the Court were inclined to probe further, the United States has introduced ample evidence showing that, at the time it received the request, the PPO was authorized to make requests under the applicable treaties.  (See United States' Mot. to Amend Reply Exs. A, C-D; see also id.

at 4-8.)  The Court defers to the Executive's reasonable conclusion that the treaties have been properly invoked in this instance.[16]  See Hwang Geum Joo v. Japan, 413 F.3d 45, 52 (D.C. Cir. 2005) ("[T]he Executive's interpretation of a treaty is ordinarily entitled to 'great weight.'") (quoting Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 184-85 (1982)), cert. denied, 546 U.S. 1208 (2006); Zivotofsky ex rel. Zivotofsky v. Clinton, _ U.S. _, 132 S. Ct. 1421, 1437 (2012) (Breyer, J., dissenting) ("The Constitution primarily delegates the foreign affairs powers to the political departments of the government, Executive and Legislative, not to the Judiciary.") (internal quotation marks omitted).  Therefore, the origins of Curaçao's request for assistance do not present an obstacle to the Court granting the United States' Motion to Amend.

Second, Ponsford and Tula argue that the United States has failed to show that the alleged conduct underlying the January 2012 Order can support forfeiture under both Curaçao and federal law—a reference to the concept of "dual forfeiture."  (See Ponsford & Tula's Mot. to Amend Opp'n at 6-9; Ponsford & Tula's Mot. to Dissolve Reply at 5-9.)  The argument proceeds from an uncertain premise—namely, that the dual forfeiture requirement actually applies where, as here, the United States is seeking the enforcement of a foreign restraining order pending final forfeiture proceedings, and not a final order of forfeiture.[17]  In this context, the district court "may register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General."  28 U.S.C. § 2467(d)(3)(A)(ii)(bb).  Although the statute speaks here of "property subject to civil

---

[16]  That includes the Executive's determination that an April 25, 2012 letter from the Curaçao Minister of Justice did not retroactively repudiate the authority of the PPO to make requests for legal assistance under the applicable treaties.  (See United States Mot. to Amend Reply at 6-8.)

[17]  Despite Ponsford and Tula's assertion to the contrary (see Ponsford & Tula's Mot. to Dissolve Reply at 5), the United does not concede that the dual forfeiture requirement applies here (see United States' Mot. to Amend Reply at 8-10).

or criminal forfeiture under foreign law," id. § 2467(d)(3)(A)(i), it does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture, see id. § 2467(a)(2)(A), (c).  Ultimately, however, the Court need not resolve the question of whether the dual forfeiture requirement applies here because, even assuming its applicability, it is satisfied in this case.  With respect to Curaçao law, the Curaçao Court granted the PPO's application "on the grounds as reported," thereby accepting that the Companies are suspects in money laundering punishable under Article 435 of the Criminal Code of Curaçao and that the seizure of the assets in the three UBS accounts is necessary for the purpose of "maintaining the right of recovery" in future forfeiture proceedings.  (Suppl. Mul Decl. Attach. 2.)  Unless and until the Curaçao Court vacates the January 2012 Order, the Court will defer to the terms of the January 2012 Order.   With respect to federal law, the Court is satisfied at this stage of the Curaçao proceedings that the Companies' alleged criminal conduct could support forfeiture under 18 U.S.C. §§ 981(a)(1), 1956, and 1957; whether or not the United States will ultimately be able to make this showing must await further development of the record in Curaçao.

Third, Ponsford and Tula argue that the January 2012 Order was not issued consistently with the requirements of due process.  (See Ponsford & Tula's Mot. to Amend Opp'n at 9-16.)  In this regard, the district court must enter a restraining order unless it finds that the foreign proceedings or procedures are "incompatible with the requirements of due process of law." 28 U.S.C. § 2467(d)(1)(A), (d)(3)(A)(ii)(I).  The district court should not lightly sit in judgment of the legal system of a foreign sovereign; to do so would run the risk of entangling the federal courts in matters of foreign affairs, the province of the political branches of our government, and would ask courts to opine on legal questions that they would generally be ill-equipped to

handle.  Therefore, the showing required is not strenuous, cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981), and the district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process.   In this case, the procedures employed to obtain the January 2012 Order—which required the PPO to present an application and investigative reports setting forth the grounds for the requested restraint to a neutral judicial decision-maker—are analogous to procedures used in the United States. See 18 U.S.C. §§ 981(b)(2), (b)(3), 983(a); 21 U.S.C. § 853(f); Fed. R. Crim. P. 41(d).   The procedures are not incompatible with due process merely because the PPO's request was made ex parte and supported by evidence that has not been made public; such features are unremarkable and, indeed, have analogs in our own legal system.   See, e.g., United States v. $129,727.00 U.S. Currency, 129 F.3d 486, 493 (9th Cir. 1997) ("Forfeitable personal property was appropriate to seize without a prior hearing because the res could be moved or hidden, thwarting the Government's interest in it."), cert. denied sub nom. Trujillo v. United States, 523 U.S. 1065 (1998).   Nor are those procedures incompatible with due process because the Companies could not directly "appeal" the January 2012 Order; the Companies can challenge the validity of the January 2012 Order by commencing Article 150 proceedings in the Curaçao Court.[18]  (See Mul Decl. ¶¶ 56-57; Sulvaran Decl. Ex. 4.)

Fourth, Ponsford and Tula argue that 18 U.S.C. § 983(j)(1)(B), and not § 983(j)(1)(A), applies to this case.  (See Ponsford & Tula's Mot. to Amend Opp'n at 16-24; Ponsford & Tula's Mot. to Dissolve Reply at 9-11.)  For the reasons set forth above (see supra. Part II), the Court

---

[18]  Even Ponsford and Tula concede that they will be able to invoke the process provided by the Curaçao legal system by commencing Article 150 proceedings as soon as this Court issues a restraining order enforcing the January 2012 Order.  (See Ponsford & Tula's Mot. to Dissolve Mem. at 10; Ponsford & Tula's Mot. to Amend Opp'n at 4; Reijntjes Decl. ¶ 26.)

rejects the argument on the record before it.  The Curaçao Court has approved the PPO's criminal financial investigation, the SFO, to identify and preserve assets for potential forfeiture; the SFO remains ongoing and the Companies are now regarded as suspects; the Curaçao Court authorized the restraint of the very assets at issue after accepting that there is reason to believe that the Companies have played an active role in money laundering; and the Curaçao Court has strongly suggested that the Companies have the ability to challenge the restraint in Curaçao right now.  (See Mul Decl. ¶¶ 15-18, 56-67; Suppl. Mul Decl. Attach. 2; Sulvaran Decl. Exs. 1, 4.)  Under these circumstances, § 983(j)(1)(B) does not apply, and § 983(j)(1)(A) has been satisfied.  Cf. Mem. Order at 3-4, In re Enforcement of a Retraining Order by the High Court, Misc. Action 11-00208 (GK) (D.D.C. Apr. 4, 2012), ECF No. [14].

Fifth, Ponsford and Tula argue that, even if the United States has made the showing required to support the issuance of a restraining order under 28 U.S.C. § 2467(d)(3), the Court should nonetheless exercise its discretion not to grant the motion based on the history of the proceedings in Curaçao.  (See Ponsford & Tula's Mot. to Amend Opp'n at 24-26.)  The United States concedes that "[e]nforcement of a foreign restraining order . . . is discretionary," but contends that the Court should exercise its discretion in favor of enforcement.  (United States' Mot. to Amend Reply at 22.)  Considering the record as a whole, the Court shall exercise its discretion to honor the January 2012 Order.  Because the Curaçao Court's Second April 2012 Order rejected the Companies' Article 43 challenge, the January 2012 Order remains in effect, and this Court will defer to its directives unless and until it is vacated or reconsidered by the Curaçao Court or the Attorney General determines that it is no longer in the interest of justice to honor Curaçao's request for legal assistance.  See 28 U.S.C. § 2467(b)(2), (d)(3)(B)(ii).

The Court has considered the remaining arguments tendered by Ponsford and Tula, and has concluded that they are without merit.  The Court finds that the United States has met its burden of showing an entitlement to the issuance of a restraining order under 28 U.S.C. § 2467(d)(3).  Accordingly, the Court shall GRANT the United States' Motion to Amend.

### B.      Ponsford and Tula's Motion to Dissolve

Through their Motion to Dissolve, Ponsford and Tula claim that this Court's restraining order must be dissolved because the July 2011 Order "is no longer in effect."  (Ponsford & Tula's Mot. to Dissolve Mem. at 7.)  However, because the Court shall grant the United States' Motion to Amend, which will effectively substitute the January 2012 Order for the July 2011 Order as the basis for the Court's restraining order, Ponsford and Tula's Motion to Dissolve shall be DENIED as moot.

### IV.  CONCLUSION

For the reasons set forth above, it is, this 17th day of May, 2012, hereby

**ORDERED** that the United States' [8] Motion to Amend is GRANTED and Ponsford and Tula's [9] Motion to Dissolve is DENIED.  An appropriate restraining order accompanies this Memorandum Opinion and Order.

It is **FURTHER ORDERED** that the parties shall file a Joint Status Report within ten (10) calendar days of the conclusion of any Article 150 proceedings concerning the three UBS accounts in the Curaçao Court.

**SO ORDERED.**                                    _____/s/_____
                                                   **COLLEEN KOLLAR-KOTELLY**
                                                   United States District Judge